UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INFINITY TRANSPORTATION
MSN 6651, LLC,

                    Plaintiff,                              Case No.


              -against-

SYNERGY AEROSPACE CORP.,

                    Defendant.

---

## COMPLAINT

Plaintiff, Infinity Transportation MSN 6651, LLC, by and through its counsel, for its Complaint against Defendant, Synergy Aerospace Corp., hereby states as follows:

## NATURE OF THE ACTION

1.      This case arises out of breaches of an agreement for the lease of an aircraft and of a related guarantee.  Specifically, Plaintiff leased an aircraft to a nonparty, whose lease obligations were guaranteed by Defendant.

2.      The nonparty lessee breached its obligations by, *inter alia*, failing to make timely rental payments, and Plaintiff now seeks to enforce the Defendant's guarantee of those obligations, which obligations Defendant has not to date met.

## THE PARTIES AND OTHER RELEVANT ENTITIES

3.      Plaintiff Infinity Transportation MSN 6651, LLC ("Lessor") is a limited liability company duly formed and existing under the laws of the State of Delaware.  Lessor is wholly owned by a Delaware limited liability company, which, in turn, is wholly owned by another Delaware limited liability company which, in turn, is wholly owned by Dublin Asset Holdings Member, Inc., a corporation incorporated and existing under the laws of the State of Delaware,

and having its principal place of business in the State of New York. Accordingly, for purposes of jurisdiction, Lessor is a citizen of the States of Delaware and of New York.

4.      Upon information and belief, Defendant Synergy Aerospace Corp. ("Guarantor") is a foreign corporation organized and existing under the laws of Panama and having its principal place of business in Panama City, Panama.

5.      Upon information and belief, nonparty Vermillion Aviation (Four) Limited ("Assignor") is a foreign corporation organized and existing under the laws of Ireland and having its principal place of business in Dublin, Ireland.

6.      Upon information and belief, nonparty Oceanair Linhas Aéreas S/A d/b/a Avianca Brasil ("Lessee") is a foreign corporation organized and existing under the laws of Brazil and having its principal place of business in São Paulo, Brazil.

## JURISDICTION AND VENUE

7.      This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between a citizen of one of the United States and a citizen or subject of a foreign state.

8.      This Court possesses personal jurisdiction over Guarantor pursuant to New York General Obligations Law § 5-1402 because the action arises out of an agreement for which a choice of New York law has been made pursuant to New York General Obligations Law § 5-1401, and which: (a) relates to obligations arising out of a transaction covering in the aggregate not less than one million dollars; and (b) contains a provision whereby Guarantor agreed to submit to the jurisdiction of any state or federal court located in the Borough of Manhattan.

9.      Venue in this District is proper pursuant to the foregoing express forum selection clause.

## GENERAL ALLEGATIONS

10.     Nonparties Assignor and Lessee entered into that certain Aircraft Operating Lease Agreement dated as of June 22, 2015 (as amended, supplemented, modified, or restated from time to time and in effect, the "Lease Agreement"), pursuant to which Assignor leased to Lessee an aircraft (the "Aircraft") more particularly described in the Lease Agreement and Schedule 1 thereto, bearing Brazilian Registration Mark PR-OCP, and consisting principally of:

(a)     an Airbus Model A320-200 aircraft bearing manufacturer's serial number 6651; and

(b)     two (2) CFM International Model CFM56-5B4/3 engines bearing manufacturer's serial numbers 569848 and 569844.

A true and correct copy of the Lease Agreement is attached as Exhibit A hereto and incorporated by reference herein.

11.     Under the Lease Agreement, Lessee agreed, *inter alia*:

(a)     to make timely payments of rent and other amounts as set forth in Clause 6 and Schedule 7 thereto (the "Rent");

(b)     that certain specified events including, without limitation, failure to timely pay any Rent within three (3) business days of the due date thereof would constitute an "Event of Default" (*see* Exhibit A ¶ 16); and

(c)     to indemnify Assignor against any losses, fees, costs and expenses (including legal, professional, inspection and other out-of-pocket expenses) suffered in connection with any Event of Default (*see id.* ¶ 17.1(a)(ii)).

12.     To secure the obligations and amounts due and owing Assignor by Lessee under the Lease Agreement, Guarantor executed that certain Guarantee dated as of June 22, 2015 in favor of Assignor (as amended, supplemented, modified, or restated from time to time and in effect, the

"Original Guarantee"). Assignor relied upon the Original Guarantee and, in consideration for the Original Guarantee, entered into the Lease Agreement. As set forth therein, the Original Guarantee was absolute and unconditional, and guaranteed all payment and performance obligations of Lessee under the Lease Agreement.

13. Subsequently, Assignor, as seller, and Lessor, as buyer, entered into that certain Aircraft Sale Agreement (MSN 6651) dated as of July 1, 2016 (the "Sale Agreement"), pursuant to which Assignor agreed to sell the Aircraft to Lessor subject to the Lease Agreement.

14. Concurrently with the sale of the Aircraft to Lessor and subject to the terms thereof, Assignor assigned all of its rights and interests under the Lease Agreement and the Original Guarantee to Lessor, subject to the rights and interests of Lessee under the Lease Agreement.

15. In order to effect the assignment and to evidence Lessee's acknowledgment of and consent to same, Assignor, Lessor and Lessee executed that certain Assignment, Assumption and Amendment Agreement (MSN 6651) dated as of January 26, 2017 (the "Assignment Agreement"). The same parties concurrently executed that certain Side Letter to the Assignment Agreement dated as of January 26, 2017 (the "Side Letter"), which *inter alia* set forth certain terms relating to rent to be paid to the Lessor. True and correct copies of the Assignment Agreement and Side Letter are attached as Exhibit B hereto and incorporated by reference herein.

16. Concurrently, to secure the obligations and amounts due and owing Lessor by Lessee under the Lease Agreement as assigned, Guarantor executed that certain Guarantee and Indemnity Agreement dated as of January 26, 2017 in favor of Lessor (as amended, supplemented, modified, or restated from time to time and in effect, the "Replacement Guarantee"). Lessor relied upon the Replacement Guarantee and, in consideration for the Replacement Guarantee, entered

into the Sale Agreement and the Assignment Agreement.  A true and correct copy of the Replacement Guarantee is attached as <u>Exhibit C</u> hereto and incorporated by reference herein.

17.     As set forth therein, under the Replacement Guarantee, Guarantor:

(a)     absolutely, unconditionally and irrevocably guaranteed all payment and performance obligations of Lessee under the Lease Agreement (*see* Exhibit C ¶ 2.1(A)-(D));

(b)     committed to pay and perform such guaranteed obligations upon demand from the Lessor and, in any event, within five (5) days of such demand (*see id*. ¶ 2.1(B));

(c)     acknowledged Lessor's entitlement to collect interest from it on any amount due at the default rate specified in the Lease Agreement (*see id*. ¶ 2.2);

(d)     agreed to indemnify Lessor from and against any loss or liability suffered by Lessor as a result of the early termination of the Lease Agreement including:

(i)     any inability by Lessor to re-lease the Aircraft on terms as favorable to Lessor as the Lease Agreement; or

(ii)     because whatever use to which the Lessor is able to put the Aircraft upon its return does not yield income equivalent to that which would have been due under the Lease Agreement (*see id.* ¶ 2.1(D)(4);

(e)     agreed to indemnify Lessor from any and all expenses which it might incur as a result of the exercise by Lessor of any of its rights and powers under the Replacement Guarantee (*see id*. ¶ 8.3);

(f)     acknowledged its liability under the Replacement Guarantee as principal and independent debtor (*see id*. ¶ 2.3); and

(g)     waived any right it may have had of first requiring Lessor to enforce its rights against Lessee (*see id*. ¶ 3.3).

18.     Guarantor further agreed that:

(a)     the Replacement Guarantee would be governed by, and construed in accordance with, the laws of the State of New York without regard to conflict of law principles (other than the provisions of New York General Obligations Law § 5-1401) (*see* Exhibit C ¶ 13); and

(b)     any legal action relating to the Guarantee could be brought in any court of the State of New York or any Federal court of the United States of America located in the Borough of Manhattan (*see id.* ¶ 14).

19.     Subsequently, Lessee defaulted under the Lease Agreement by, *inter alia*, failing to make timely payment of Rents due thereunder.

20.     Accordingly, on or around February 16, 2018, Lessor notified Lessee of these defaults, demanded that Lessee cure all defaults, and reminded Lessee of Lessor's rights and remedies under the Lease Agreement.  Lessor copied Guarantor on this default notice.  A true and correct copy of such default notice is attached as Exhibit D hereto and incorporated by reference herein.

21.     Notwithstanding these defaults (the "Initial Defaults"), Lessor and Lessee negotiated and entered into that certain Forbearance Agreement, dated as of April 13, 2018 (the "Forbearance Agreement"), pursuant to which Lessor agreed to temporarily refrain from exercising its rights and remedies under the Lease Agreement in exchange for Lessee's payment of past due amounts with specified interest pursuant to a schedule of "Installment Payments" set forth therein.  A true and correct copy of the Forbearance Agreement is attached as Exhibit E hereto and incorporated by reference herein.

22.     Guarantor also executed the Forbearance Agreement, acknowledging that all of its prior guarantee obligations remained in full force and effect and that its guarantee obligations extended to the obligations of Lessee under the Forbearance Agreement.

23.     In executing the Forbearance Agreement, Lessee acknowledged and admitted:

(a)     the existence of the Initial Defaults and its liability to Lessor under the Lease Agreement (*see* Exhibit E ¶¶ A-B);

(b)     that as of April 13, 2018, the past due amounts totaled no less than $993,083.47, as more fully set forth in Schedule 1 to the Forbearance Agreement (*see id*. ¶ 1.2 and Schedule 1 thereto);

(c)     that the obligations contained within the Lease Agreement were legal, valid and binding (*see id*. ¶ 7);

(d)     that Lessor retained all of its existing rights and remedies under the Lease Agreement and that nothing in the Agreement was to be construed as a waiver of or acquiescence to the Initial Defaults (*see id*. ¶¶ 4.1-4.2); and

(e)     that, in the event of a default by the Lessee on its payment obligations thereunder, the entire agreed-upon past due amount would become immediately due and owing on demand and would bear interest from the point of such default at a rate equal to the lower of thirteen percent (13%) per annum or the highest lawful rate (*see id*. ¶¶ 3.2, 5.2).

24.     Both Lessee and Guarantor also provided Lessor with a broad general release (*see id*. ¶ 8).

25.     Nonetheless, Lessee again defaulted under the Lease Agreement, as well as the Forbearance Agreement, by, *inter alia*, failing to make timely payment of the amounts due and owing under the Lease Agreement and the Forbearance Agreement.

26.     Accordingly, on or around October 29, 2018, Lessor notified Lessee of these defaults, demanded that Lessee cure all defaults, and reminded Lessee of Lessor's rights and remedies under the Lease Agreement and the Forbearance Agreement.  Lessor copied Guarantor on this default notice.  A true and correct copy of such default notice is attached as <u>Exhibit F</u> hereto and incorporated by reference herein.

27.     Despite this demand, Lessee failed to remedy its defaults under the Lease Agreement and the Forbearance Agreement, and Guarantor failed to remedy its defaults under the Replacement Guarantee.

28.     Accordingly, Lessor exercised its right to cease forbearance and demanded immediate payment of the full balance of the Past Due Amounts (as defined in the Forbearance Agreement), communicating its exercise of such right and demand to Guarantor by letter dated November 3, 2018.  A true and correct copy of such letter (omitting the attachments thereto) is attached as <u>Exhibit G</u> hereto and incorporated by reference herein.

29.     On or about November 13, 2018, Lessor exercised its right to terminate leasing of the Aircraft by delivering written notice of the same to Lessee.  Lessor copied Guarantor on this termination notice.  A true and correct copy of such default notice is attached as <u>Exhibit H</u> hereto and incorporated by reference herein.

30.     After numerous failed attempts by Lessor to negotiate an uncontested repossession of the Aircraft with Lessee, on or about November 21, 2018, Lessor filed a petition with the courts in Sao Paulo, Brazil to repossess the Aircraft.  Despite numerous attempts by Lessee to prevent or delay repossession by Lessor, Lessor was successful in repossession the Aircraft.

31.     On or about December 10, 2018, Lessee filed a petition for judicial recuperation, which is Brazil's equivalent to a bankruptcy filing in the United States under Chapter 11.  On or about December 13, 2018, the Brazil courts granted Lessee judicial recuperation protection.

32.     Based on the foregoing, the following amounts (totaling no less than $2,500,000.00) are now due and owing from the Guarantor:

(a)     the Rent that was due on September 27, 2018 and October 27, 2018 in the cumulative amount of $721,877.12, plus interest thereon;

(b)     the Maintenance Reserves that were due on August 15, 2018, September 17, 2018, October 15, 2018, November 15, 2018 and December 15, 2018, in the cumulative amount of $830,422.13, plus interest thereon;

(c)     accrued and unpaid interest on Installment Payments (as defined in the Forbearance Agreement) that were due on July 16, 2018 and August 15, 2018;

(d)     the Installment Payments that were due on September 17, 2018 and October 15, 2018 in the cumulative amount of $173,435.26, plus interest thereon;

(e)     the remaining Installment Payments that would have been due on November 15, 2018 and December 17, 2018 in the cumulative amount of $257,292.07, plus interest thereon; and

(f)     costs, fees and expenses incurred by Lessor in connection with terminating the leasing of the Aircraft and repossession of the Aircraft, as well as costs, fees and expenses incurred by Lessor in exercising its rights under the Guarantee, totaling no less than $500,000 through January 1, 2019.

## COUNT I

### BREACH OF GUARANTEE

33.     Lessor repeats and realleges Paragraphs 1 through 32 of this Complaint as and for this Paragraph 32, as if fully set forth herein.

34.     The Replacement Guarantee executed by Guarantor in favor of Lessor constitutes a valid and enforceable contract between Lessor and Guarantor.

35.     Guarantor is in breach of the Replacement Guarantee, as set forth above.

36.     Lessee has failed to pay Lessor all amounts due under the Guarantee, including:

(a)     Rent, Maintenance Payments and Installment Payments, and accrued interest thereon in an amount to be determined;

(b)     losses suffered as a result of the early termination of the Lease Agreement and repossession of the Aircraft in an amount to be determined; and

(c)     costs, fees and expenses in an amount to be determined.

37.     Despite Lessor's demands for payment, Guarantor has failed and refused to pay to Lessor the aggregate amount of its respective obligations owing to Lessor under the Guarantee.

38.     As a direct and proximate result of Guarantor's breaches of the Replacement Guarantee, Lessor has suffered damages (and continues to suffer damages) in an amount not less than $2,500,000.00 as of January 1, 2019, in addition to all interest, costs, charges and expenses, including attorneys' fees, accrued (and accruing) through and after the dates set forth above, and all other amounts due under the Lease Agreement, the Forbearance Agreement and the Replacement Guarantee.

**WHEREFORE**, Plaintiff, Infinity Transportation MSN 6651, LLC, prays for judgment in its favor and against Defendant, Synergy Aerospace Corp., in the amount of not less than $2,500,000.00, in addition to all costs, charges and expenses, including attorneys' fees, accrued (and accruing) through and after the dates set forth above, all other amounts due under Lease Agreement and the Replacement Guarantee, and such other and further relief as this Court deems just and appropriate.

Dated: January 8, 2019                    Respectfully submitted,

                                          VEDDER PRICE P.C.


                                          By:  s/ Daniel C. Green
                                              Daniel C. Green
                                              dgreen@vedderprice.com
                                              1633 Broadway, 31st Floor
                                              New York, New York 10019
                                              T:  +1 212 407 7700
                                              F:  +1 212 407 7799

                                              James V. Garvey
                                              (*pro hac vice* application forthcoming)
                                              jgarvey@vedderprice.com
                                              222 North LaSalle Street
                                              Chicago, Illinois 60601
                                              T:  + 312 609 7500
                                              F:  + 312 609 5005

                                              Attorneys for Plaintiff
                                              INFINITY TRANSPORTATION
                                              MSN 6651, LLC