EXECUTION VERSION

This **FORBEARANCE AGREEMENT** (this "Agreement") is made on April 13, 2018 (the "Effective Date"):

**BETWEEN:**

**INFINITY TRANSPORTATION MSN 6651, LLC**, a limited liability company incorporated under the laws of the State of Delaware, with registered office at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, U.S.A. (the "Lessor");

and

**Oceanair Linhas Aéreas S.A.,** a *sociedade anônima* organized under the laws of Brazil with its principal place of business at Avenida Washington Luiz, 7059, Campo Belo, Sao Paulo, SP, CEP 04627-006, Brazil (the "Lessee").

### RECITALS:

(A)    Lessor and Lessee are parties to that certain Aircraft Operating Lease Agreement dated as of June 22, 2015 as assigned, assumed and amended by the Assignment, Assumption and Amendment Agreement on January 26, 2017 (the "Lease"), pursuant to which Lessor leased to Lessee one (1) Airbus model A320-214 aircraft bearing manufacturer's serial number 6651 and registration mark PR-OCP (the "Airframe") and two (2) CFM International Model CFM56-5B4/3 engines bearing manufacturer's serial numbers 569848 and 569844, respectively (collectively with Airframe, the "Aircraft").

(B)    An Event of Default has occurred under Section 16.1(a) of the Lease due to Lessee's failure to make timely payments due under the Lease, as more particularly described in Schedule 7 of the Lease (the "Existing Default"), resulting in the Lessee being liable for the Past-Due Amounts (as defined below).

(C)    Lessor is willing to forbear from exercising and enforcing all rights and remedies under the Lease as a result of the Existing Default for a limited period of time, provided that Lessee complies with its obligations hereunder and there occurs no Forbearance Default.

(D)    Guarantor has agreed to consent to the terms of this Agreement and provide its confirmation that the Guaranteed Obligations (as defined in the Guarantee and Indemnity Agreement entered as of January 26, 2017 between Guarantor and Lessor) shall remain in full force and effect notwithstanding the transactions contemplated hereby, and that the obligations of Lessee that are supported by the Guaranteed Obligations include the obligations of the Lessee hereunder.

Accordingly **IT IS AGREED** as follows:

1.    **DEFINITIONS AND INTERPRETATION**

1.1    Capitalized terms used but not defined in this Agreement shall mean the same as defined in the Lease unless otherwise stated. References to sections are to sections and schedules of this Agreement unless otherwise specified or the context requires.

1.2    As used in this Agreement, and solely for purposes of this Agreement, the following terms shall have the following meanings:

EXECUTION VERSION

"Forbearance Default" means (a) the occurrence of any Event of Default other than the Existing Default; (b) the failure of Lessee to comply with any term, condition or covenant set forth in this Agreement, or (c) any representation made by Lessee under or in connection with this Agreement shall prove to be false or misleading as of the date when made.

"Guarantor" means Synergy Aerospace Corp., a company incorporated under the laws of the Republic of Panama.

"Past-Due Amounts" means, as of the date hereof, an aggregate amount equal to US$993,083.,47 (Nine Hundred Ninety Three Thousand Eighty Three Dollars and Forty Seven Cents), as more fully described in **Schedule 1** hereto.

"Past Due Interest Rate" means 10.0% per annum.

2.    **REPRESENTATIONS AND WARRANTIES**

As a material inducement to the willingness of the Lessor to enter into this Agreement, Lessee hereby repeats the representations and warranties in Section 2.1 of the Lease as if made with reference to the facts and circumstances now existing and as if references therein to the Lease as amended by this Agreement, and further warrants that as of the Effective Date:

(a)    it has not taken any corporate action, nor have any legal proceedings been commenced in connection with:

    (i)    the suspension of payments, a moratorium or any indebtedness, winding-up, administration, dissolution or reorganization (by way of voluntary arrangement or otherwise) in respect of the Lessee;

    (ii)    a composition, compromise, assignment or arrangement with any class of creditor of the Lessee;

    (iii)    the appointment of a liquidator, receiver, administrator or similar officer in respect of the Lessee or its assets;

(b)    no litigation, arbitration, administrative proceeding, or enforcement action is taking place, pending or threatened against the Lessee which would adversely affect the ability of the Lessee to perform its obligations under the Lease or this Agreement;

(c)    other than the failure to pay the Past-Due Amounts, no other Event of Default has occurred and is continuing;

(d)    the execution, delivery and performance of this Agreement by Lessee has been duly authorized and approved by all necessary action on the part of Lessee;

(e)    this Agreement constitutes a valid and legally binding obligation enforceable against Lessee in accordance with its terms; and

(f)    it is not aware of any Claims (as defined below), arising under the Lease or any other documents or instruments entered into in connection therewith or any

person's rights or obligations thereunder, nor is it aware of any facts or circumstances that would give rise to any such Claims.

**3.    REPAYMENT & LEASE AMENDMENT**

3.1    Interest on Past-Due Amounts. Notwithstanding anything contained in the Lease to the contrary, interest shall accrue at the Past-Due Interest Rate on each Installment Amount (as defined below) for the period from the respective due date of such payment under the Lease until the repayment in full of such Installment Payment as set forth in Schedule 1 of this Agreement. All such interest will be calculated on the basis of the actual number of days elapsed in the month, assuming a thirty (30) day month and a three hundred and sixty (360) day year.

3.2    Default Interest. Notwithstanding anything contained in the Lease to the contrary and in addition to any other rights or remedies available at law, in equity or otherwise, after the occurrence and during the continuance of a Forbearance Default, all outstanding and unpaid Past-Due Amounts shall bear interest, from the date of the occurrence of such Forbearance Default until the date such Forbearance Event of Default is cured or waived, at a rate per annum equal to the lower of (i) 13% per annum and (ii) the Highest Lawful Rate (as defined below), which interest shall be payable on demand. All such interest will be calculated on the basis of the actual number of days elapsed in the month, assuming a thirty (30) day month and a three hundred and sixty (360) day year.

3.3    Repayment of Past-Due Amounts. Lessee covenants and agrees to repay the Past-Due Amounts, in full, as follows:

(a)    US$993,083.47 (Nine Hundred Ninety Three Thousand Eighty Three Dollars and Forty Seven Cents), *plus* an additional amount equal to imputed interest on such amount at the Past-Due Interest Rate (which interest shall be deemed to accrue on such amount effective February 15, 2018), as set forth in additional detail on **Schedule 2** hereto, shall be remitted over ten (10) monthly installments (each, an "Installment Payment"), each such Installment Payment being due and payable on or before 5:00 pm (NY time) on the 15th calendar day of each month (or the next succeeding Business Day) (each, an "Installment Payment Date") as follows:

| Installment Payment Date | Installment Payment |
|---|---|
| March 15, 2018 | $86,717.63 |
| April 16, 2018 * | $86,717.63 |
| May 15, 2018 | $86,717.63 |
| June 15, 2018 | $173,435.26 |
| July 16, 2018 * | $86,717.63 |
| August 15, 2018 | $86,717.63 |

| Installment Payment Date | Installment Payment |
|---|---|
| September 17, 2018 * | $86,717.63 |
| October 15, 2018 | $86,717.63 |
| November 15, 2018 | $173,435.26 |
| December 17, 2018 * | $86,717.58 |

\* The 15th of the month falls on a day that is not a Business Day so the Installment Payment Date above is the next succeeding Business Day.

(b)   To the extent any Installment Payment is not paid by the applicable Installment Payment Date (as set forth in clause (b) above), the Installment Payment shall accrue Default Interest (as calculated under Section 3.2 hereof).

(c)   On or before the day of each payment of Past-Due Amounts under this Section 3.3, Lessee shall provide the Lessor with a copy of the foreign exchange agreement (*contrato de cambio*) in respect of such payment.

(d)   As of the Effective Time and concurring with payments described in this Section 3.3(a) and (b), Lessee shall continue to pay to Lessor all other payments due and payable by Lessee under the Lease as described in the Lease.

3.4   Voluntary Prepayment. Notwithstanding anything contained herein to the contrary, Lessee shall have the right to pre-pay, in whole or in part, any Past-Due Amounts (together with any accrued interest thereof) prior to the time at which any such amounts are required to be paid pursuant to Section 3.3. Lessee shall provide Lessor with not less than five (5) Business Days' prior written notice in accordance with the notice provisions of the relevant Lease specifying the date and amount of the prepayment. In the event of any prepayment hereunder, accrued interest on the amount prepaid shall be payable by Lessee on such date. Any prepayment of less than all Past-Due Amounts shall be applied in the manner set forth in Section 3.5(a).

3.5   Application of Payments.

(a)   Without prejudice to the Lessor's rights set forth in Section 20.7 (*Application of Moneys*) of the Lease, all payments made by Lessee pursuant to Section 3.3 or Section 3.4 above shall be applied as follows: (i) *first* to accrued but unpaid interest (including, without limitation, interest due and payable pursuant to Section 3.1 or Section 3.2 above) and (ii) *second* to the relevant Past-Due Amount, in each case, in inverse order of the date on which such amount is due and payable hereunder.

(b)   Lessee will use reasonable commercial efforts to enter into deferral or repayment arrangements with its other lessors under substantially similar terms to this Agreement.

3.6  <u>Regular Lease Payments</u>.  Notwithstanding anything contained herein or in the Lease to the contrary, from and after the Effective Time, Lessee shall continue to make timely payments of all amounts owed under the Lease on the terms set forth therein. After the occurrence and during the continuance of an Event of Default resulting from a breach of this Agreement, all Past-Due Amounts shall bear interest, from the date of the occurrence of such Event of Default until the date such Event of Default is cured or waived, at a rate per annum equal to the Default Rate (as defined in the Lease).

## 4.  AGREEMENT TO FORBEAR

4.1  Provided that no Forbearance Default occurs, Lessor hereby agrees to refrain from exercising any of its rights and remedies under the Lease that may exist by virtue of the Existing Default; *provided* that in no event shall the foregoing be deemed to limit, modify, amend, waive or otherwise affect Lessor's rights and remedies that exist due to the existence of the Existing Default, all of which rights and remedies are hereby expressly reserved and which may be enforced by Lessor in accordance with the terms of the Lease. Following the time at which Lessee make all payments required under <u>Section 3</u> hereof and under the Lease in accordance with their terms, and provided that Lessee complies with all other terms, covenants and conditions set forth in this Agreement, the Lessor agrees that the Existing Default shall be deemed waived effective as of such time.

4.2  Nothing in this Agreement shall be construed as a waiver of or acquiescence to the Existing Default which shall continue in existence, subject only to the agreement of the Lender, as set forth herein, not to enforce their remedies for a limited period of time. Except as expressly provided herein, the execution and delivery of this Agreement shall not: (a) constitute a modification or waiver of any aspect of the Lease; (b) give rise to any obligation on the part of the Lessor to extend, modify or waive any term or condition of the Lease; (c) give rise to any defenses or counterclaims to the right of the Lessor to compel payment or to otherwise enforce its rights and remedies under the Lease; or (d) establish a custom or course of dealing between Lessee and Lessor. Except as expressly limited herein, the Lessor hereby expressly reserve all of their rights and remedies under the Lease and under applicable Law with respect to the Existing Default.

## 5.  EVENT OF DEFAULT

5.1  If Lessee breaches or failure to comply with any of the terms of this Agreement such breach or failure shall be an Event of Default under this Agreement and under the Lease.

5.2  Lessor may at any time decline to effect and/or continue the repayment schedule referenced in <u>Section 3.3</u> above if at any time there is any uncured Forbearance Default and in which case Lessee shall pay on demand the full Past-Due Amounts then outstanding together with all interest that has or would have accrued pursuant to <u>Section 3.1</u> or <u>Section 3.2</u> above had Lessor's option under this <u>Section 5.2</u> not been exercised.

5.3  For the avoidance of doubt, nothing in this Agreement shall be construed as an agreement by Lessor to grant any waiver of any Event of Default or any

EXECUTION VERSION

forbearance in respect of any Forbearance Default, including in each case and without limitation, any Forbearance Default that may occur at any time on or after the date hereof.

6.   **LESSEE'S ADDITIONAL OBLIGATIONS**

6.1   <u>Additional Obligations</u>. Lessee shall provide Lessor with the following:

(a)   copies of the resolutions of the board of director of each of Lessee and Guarantor or other corporate approval or authorizations necessary for Lessee to enter into this Agreement (if any);

(b)   Lessee shall obtain the necessary notarization and apostile of the signatories of Guarantor in order to file this Agreement and its sworn translation into Portuguese with the Brazilian Aeronautical Registry (the "<u>RAB</u>") within no more than five (5) businesses days following the date hereof and shall provide Lessor with an updated certificate issued by the RAB as soon as possible after the date of such filings;

(c)   Lessee shall obtain all necessary approvals together with the Brazilian Central Bank in order to remit payments to Lessor as described in this Agreement in addition to the ROF already obtained under the Lease; and

(d)   such other documents as Lessor may reasonably request, including, without limitation, legal opinions and financial information of Lessee.

5.2   <u>Waiver</u>. The conditions specified in this <u>Section 6</u> are for the sole benefit of the Lessor and may be waived or deferred (in whole or in part and with or without conditions) by the Lessor without prejudice to any of Lessor's rights.

5.3   <u>Notices</u>. In addition to Section 20.8 of the Lease any notice to Lessee in relation to this Agreement shall also be sent to the persons described below:

Infinity Transportation MSN 6651, LLC
c/o Global Atlantic Equipment Management, LLC
4 World Trade Center
150 Greenwich Street
51st Floor
New York, NY 10007
Attn: Joshua Davis
Email: josh.davis@gafg.com

7.   **CONTINUATION OF LEASE**

Subject to the provisions of this Agreement, the Lease shall continue in full and unvaried force and effect as the legal, valid and binding rights and obligations of the Lessor and Lessee, enforceable in accordance with their respective terms.

8.   **RELEASE**

In consideration of, among other things, the forbearance provided for herein, and any other financial accommodations which the Lessor has agreed to extend to Lessee hereunder, Lessee and Guarantor, on their own behalf and on behalf of their respective affiliates, forever waives, releases and discharges any and all claims (including, without limitation, cross-claims, counterclaims, rights of setoff and recoupment), causes of action, demands, suits, liabilities, costs, expenses and damages that it now has or hereafter may have, of whatsoever nature and kind, whether known or unknown, whether now existing or hereafter arising, whether arising at law or in equity that arise under or relate to this Forbearance Agreement (collectively, "Claims"), against the Lessor, its subsidiaries and affiliates, and its and their respective successors, assigns, officers, directors, employees, agents, attorneys and other representatives, based in whole or in part on facts, acts or omissions, whether or not known, originating or existing on or prior to the date of this Agreement. The provisions of this section shall survive the termination of the Lease.

9.   **MISCELLANEOUS**

9.1   Further Assurances.  Lessee agrees from time to time to do and cause to be done such further acts and deliver such other instruments as may be required by law or reasonably requested by the applicable Lessor to establish, maintain and protect the rights and remedies of the Lessor under the Lease and this Agreement.

9.2   Counterparts. This Agreement may be executed in any number of duplicate originals, each of which shall be fully-executed by Lessor, Lessee and witnesses.

9.3   Governing Law, Jurisdiction, Lessee's Process Agent, Waiver of Immunity. Sections 20.12 and 20.13 of the Lease are incorporated into this Agreement as if set out in full herein.

9.4   Incorporation of Terms. All other Sections of the Lease are incorporated into this Agreement as if set out in full herein.

9.5   Amendments, Modifications, Waivers in Writing. The provision of this Agreement may be amended, modified, or waived only by an instrument in writing executed by Lessor and Lessee.

9.6   Invalidity of any Provision. If any provision of this Agreement becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

9.7   Costs and Expenses. Lessee shall pay to the Lessor within ten (10) Business Days of demand all fees, costs and expenses (including legal, professional, and out-of-pocket) incurred by Lessor in connection with the preparation, negotiation and completion of this Agreement and performance of the transactions contemplated hereby.

9.8   Time of the Essence. The time stipulated in this Agreement for all payments by Lessee to Lessor and for the performance of Lessee's other obligations under this Agreement will be of the essence of this Agreement.

9.9     Entire Agreement. This Agreement constitutes the entire agreement between the parties in relation to the Past-Due Amounts contemplated between Lessor, Lessee and Guarantor with respect to the Lease and supersedes all previous proposals, agreements, and other written and oral communications in relation hereto.

9.10    Extrajudicial Executory Instrument. This Agreement and all payments made in accordance with the terms of this Agreement, in particular the payments required pursuant to Section 3.3(a) above, shall be deemed an extrajudicial executory instrument.

9.11    Operative Document. This Agreement shall constitute an "Operative Document" under the Lease.

9.12    Reaffirmation. The Lessee hereby reaffirms each and every covenant, condition, obligation and provision set forth in the Lease, as modified hereby.

9.13    Construction. The Lessee acknowledges that it has been represented by its own legal counsel in connection its execution of this Agreement s, that it has exercised independent judgment with respect to this Agreement, and that it has not relied on the Lessor for any advice with respect to this Agreement.

9.14    Usury Savings Clause. Notwithstanding any other provision herein, the aggregate interest rate charged with respect to any Past-Due Amounts, including all charges or fees in connection therewith deemed in the nature of interest under applicable law will not exceed the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under applicable Law which are presently in effect or, to the extent allowed by Law, under such applicable Law which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable Laws allows (the "Highest Lawful Rate"). If the rate of interest (determined without regard to the preceding sentence) under this Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of Past-Due Amounts made hereunder will bear interest at the Highest Lawful Rate until the total amount of interest due hereunder equals the amount of interest which would have been due hereunder if the stated rates of interest set forth in this Agreement had at all times been in effect. Notwithstanding the foregoing, it is the intention of the Lessee and the Lessor to conform strictly to any applicable usury laws. Accordingly, if the Lessor contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess will be cancelled automatically and, if previously paid, will at the Lessor's option be applied to the outstanding amount of Past-Due Amounts required to be paid hereunder or be refunded to the Lessee.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement, each by its duly authorized representative(s), as of the date shown at the beginning of this Agreement.

*[Signature page follows]*



**LESSOR:**

**INFINITY TRANSPORTATION MSN 6651, LLC**

By: _Priscila Uliana_ (signature)

Name: _Priscila Uliana_

Title: _Attorney in Fact/Procuradora_

4º TABELIÃO DE NOTAS - Estado de São Paulo - Comarca da Capital
RUA ESTADOS UNIDOS, 455 - CEP: 01427-000 - FONE: (0XX11) 3085-5767
Tabelião: Bel. OSVALDO CANHEO   - / Tabelião Substituto: Bel. ANTÔNIO CANHEO

RECONHECO por SEMELHANCA C/ VALOR DECLARADO 1 firma(s) de:
PRISCILA ULIANA
São Paulo, 13 de abril de 2018.
Em test. _____ da verdade. P: 172
JUCIANA LEÃO XAVIER - Escrevente
Vlr:R$ 9,25. £:5525459 Selo(s): 63191-1038AD
Válido somente com o selo de Autenticidade.

1038AB0063191

"VÁLIDO SOMENTE COM O SELO DE AUTENTICIDADE, REFERENCIAS SIGILIA SURAC"

EXECUTION VERSION

**LESSEE:**

**OCEANAIR LINHAS AÉREAS S.A.**

By:
Name:   Frederico Pedreira
Title:   Presidente

Witnesses:

Name:   Bruno Gallinella
ID:     RG: 25.219.000-2

Name:   Luen Pereira Refundini
ID:     RG: 30.450.897-4

SUBDISTRITO - INDIANÓPOLIS

Selo(s): 2 Ato:AA – 0699265 | 1 Ato:AB – 0060409
Resonheço, por Semelhança, as firmas de: (1) FREDERICO MIGUEL
PREZA PEDREIRA ELIAS DA COSTA, (2) BRUNO GALLINELLA e (1) LUEN
PEREIRA REFUNDINI, com valor econômico, conforme padrão
depositado nesta Serventia.
São Paulo, 13 de abril de 2016.
Em testemunho                     da verdade.

URCPN 24ª – INDIANÓPOLIS(Valor Unit.R$ 9,26;Qtde:Total R$ 27,75)
Feito por:PAULOR

AVENIDA DOS EUCALIP

Colégio Notarial
do Brasil
1 1 5 0 3 0
FIRMA
VALOR ECONÔMICO
0 4 9 A B 0 0 6 0 4 0 9
FIRMA
VALOR ECONÔMICO
0 4 9 A A 0 6 9 9 2 6 5

Para produzir efeito no Brasil
o para valer contra terceiros,
deverá ser vertido em vernáculo
e registrada a tradução.

24ª SUBDISTRITO REGISTRO CIVIL
"INDIANÓPOLIS"
Alex Moreira Santos Junior
ESCREVENTE AUTORIZADO

-Signature Page-
Repayment and Amendment Agreement

EXECUTION VERSION

Guarantor hereby confirms that it has reviewed the terms and conditions of this Agreement and that the obligations of Lessee that are supported by the Guaranteed Obligations include the obligations of the Lessee hereunder as if this Agreement were an "Operative Document" under the Lease at the time the Guaranteed Obligations were issued.   The Guaranteed Obligations remain in full force and effect. Guarantor hereby unconditionally waives any circumstances that might constitute a legal or equitable discharge of the Guaranteed Obligations and waives any defense related to the enforcement of the Guaranteed Obligations.

**SYNERGY AEROSPACE CORP.**

By: _____

Name: michael welch

Title: Director



| | | | | | | Schedule 1 | | | | |
| | | | | | | MSN 6651 Avianca - Past-Due Amounts | | | | |

| Invoice Date | Invoice # | Description | Due Date | Past-Due Amounts | Amounts Paid in February 2018 [1] | Balance Due - Covered by Installments |
|---|---|---|---|---|---|---|
| 30-Nov-17 | 6651-2017_11DI | Default Interest | Upon Receipt | $838.15 | $838.15 | $0.00 |
| 31-Dec-17 | 6651-2017_12DI | Default Interest | Upon Receipt | 4,034.28 | 4,034.28 | 0.00 |
| 31-Jan-18 | 6651-2018_01DI | Default Interest | Upon Receipt | 6,523.40 | 6,523.40 | 0.00 |
| 1-Nov-17 | 6651-2017_11R | Rent | 27-Nov-17 | 360,938.56 | 0.00 | 360,938.56 |
| 1-Dec-17 | 6651-2017_12R | Rent | 27-Dec-17 | 360,938.56 | 114,171.96 | 246,766.60 |
| 2-Jan-18 | 6651-2018_01R | Rent | 27-Jan-18 | 360,938.56 | 360,938.56 | 0.00 |
| 8-Nov-17 | 6651-2017_10RES | October MR | 15-Nov-17 | 199,891.97 | 0.00 | 199,891.97 |
| 8-Dec-17 | 6651-2017_11RES | November MR | 15-Dec-17 | 185,486.34 | 0.00 | 185,486.34 |
| 9-Feb-18 | 6651-2018_01RES | January MR | 15-Feb-18 | 193,493.65 | 193,493.65 | 0.00 |
| | | | Totals | $1,673,083.47 | $680,000.00 | $993,083.47 |

[1] $680,025 was received on February 16, 2018.  $25 of this payment will be applied toward the next rental invoice to be issued on April 2, 2018.

**Schedule 2**

**MSN 6651 Avianca - Installment Payments**

| Balance Covered by Installments | $993,083.47 |
|---|---|
| Past-Due Interest Rate | 10% |

| Installment Payment Date | Balance Due Prior to Payment | Past-Due Interest | Principal | Installment Payment | Balance Due After Payment |
|---|---|---|---|---|---|
| 15-Mar-18 | $993,083.47 | $8,275.70 | $78,441.93 | $86,717.63 | $914,641.54 |
| 16-Apr-18 | 914,641.54 | 7,622.01 | 79,095.62 | 86,717.63 | 835,545.92 |
| 15-May-18 | 835,545.92 | 6,962.88 | 79,754.75 | 86,717.63 | 755,791.17 |
| 15-Jun-18 | 755,791.17 | 6,298.26 | 167,137.00 | 173,435.26 | 588,654.17 |
| 16-Jul-18 | 588,654.17 | 4,905.45 | 81,812.18 | 86,717.63 | 506,841.99 |
| 15-Aug-18 | 506,841.99 | 4,223.68 | 82,493.95 | 86,717.63 | 424,348.04 |
| 17-Sep-18 | 424,348.04 | 3,536.23 | 83,181.40 | 86,717.63 | 341,166.64 |
| 15-Oct-18 | 341,166.64 | 2,843.06 | 83,874.57 | 86,717.63 | 257,292.07 |
| 15-Nov-18 | 257,292.07 | 2,144.10 | 171,291.16 | 173,435.26 | 86,000.91 |
| 17-Dec-18 | 86,000.91 | 716.67 | 86,000.91 | 86,717.58 | 0.00 |
| Totals | | $47,528.04 | $993,083.47 | $1,040,611.51 | |